UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-CR-334(2) (JNE/KMM)

UNITED STATES OF AMERICA,

        Plaintiff,           **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

   v.

(2)  JOHN L. STEELE,

        Defendant.

The United States of America, by and through its attorneys Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Benjamin F. Langner and David J. MacLaughlin, and Brian Levine, U.S. Department of Justice Senior Counsel, submits this memorandum setting forth its position with respect to sentencing factors in this matter as to defendant John L. Steele.

**I.**     **The PSR**

The United States agrees with the factual statements set forth in the Presentence Investigation Report ("PSR").  In addition, the United States agrees with the sentencing guidelines calculations contained in the PSR.  As reflected in the report, the appropriate guidelines range for John Steele is 97 to 121 months in prison.

The government does not believe that there are any disputes regarding the application of the Guidelines, and does not believe that an evidentiary hearing is necessary for defendant Steele.

## II.     Factual Background

Between 2011 and 2014, John Steele and co-defendant Paul Hansmeier orchestrated an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country.  Steele and Hansmeier were practicing attorneys who owned and controlled several law firms they used to sue (or threaten to sue) individuals accused of illegally downloading their supposed client's copyrighted pornography.  Unbeknownst to the courts they appeared before, the defendants set up sham entities that they used as their clients.  The sham entities housed the copyrights to pornographic movies they obtained, some of which they filmed themselves.  The defendants then uploaded those movies to file-sharing websites in order to lure people to download the movies.

To learn the identities of the people caught in the trap they constructed, Steele and Hansmeier filed specious copyright infringement lawsuits and fraudulently procured permission from courts to send subpoenas to internet service providers for subscriber information associated with the IP addresses used to download their pornographic movies. After receiving this information, the defendants—through extortionate letters and phone calls—threatened the subscribers with enormous financial penalties and public embarrassment unless the subscribers agreed to pay a settlement, all the while concealing from courts and their victims the defendants' collusion in the alleged copyright infringement.

When courts later restricted their ability to sue multiple individuals in the same lawsuit, the defendants shifted tactics.  They filed lawsuits falsely alleging that computer

systems purportedly belonging to their sham clients had been infiltrated by hackers, and then recruited ruse defendants against whom they brought fraudulent lawsuits falsely accusing the defendants of "hacking" the computer systems belonging to the defendants' clients. Finally, when courts became suspicious of the defendants' tactics and motives, the defendants began a long process of lies and deceit designed to conceal the truth and deflect responsibility from themselves.

In total, the defendants obtained approximately $3,000,000 from the fraudulent copyright lawsuits they peddled to courts throughout the country.

### III. The Appropriate Sentence in Light of 18 U.S.C. § 3553(a)

John Steele presents an interesting case for this Court. On the one hand, Steele—along with co-defendant Paul Hansmeier—orchestrated one of the largest, and certainly one of the most brazen, fraudulent schemes centered on deceiving courts through false and deceptive lawsuits. While purporting to act as an officer of the court, Steele repeatedly lied to and misled courts throughout the country, going so far as to perjure himself and cause others to commit perjury in order to carry out and cover up the scheme. Steele committed this crime for no reason other than to line his pockets and feed his ego. The magnitude and depravity of the crime—particularly when carried out by two attorneys—calls for a significant punishment.

On the other hand, since he was charged in this case, Steele has not shied away from the ugly truth of his crimes and the significant consequences that he faces. Unlike co-defendant Hansmeier and many other similarly situated defendants, Steele has not tried to evade or minimize the extent and impact of his crimes. Shortly after being charged, Steele

met with the government, provided a truthful and complete rendition of his misconduct, and since that time has stood ready to testify against Hansmeier if called upon to do so.

Given the plethora of self-serving invective and false bravado that Steele spewed to courts, defense counsel, and the public between 2010 and 2013, the government expected Steele to have significant difficulty coming to terms with what he had done. To its surprise, however, Steele provided an accurate, detailed, and unvarnished account of the massive scheme he perpetrated with Hansmeier. Steele seemed relieved to finally be free of his ego. The Court, and the public, would be right to be wary of convenient remorse expressed by a practiced deceiver, but from the government's interactions with Steele, his remorse and shame seem real.

To his credit, Steele also refrained from attacking the legality of his prosecution and conviction, acknowledging that his conduct—while cloaked with legitimacy—was really nothing more than lies and deception. Steele has also refrained from making frivolous arguments about the facts of the case and applicability of the sentencing guidelines enhancements. There is a stark difference between how Steele and his co-defendant have responded to the charges against them.

Steele committed a serious crime, one that victimized not just the people who paid money to avoid being named in fraudulent lawsuits but also the court system. For his crimes, Steele should be sentenced to a significant term of imprisonment, but that term should be mitigated by his cooperation with the government and genuine remorse. The government intends to file a letter with the Court closer in time to sentencing setting forth in detail the cooperation provided by Steele, and making a specific sentencing

recommendation.

Dated: February 28, 2019                     Respectfully submitted,

                                             ERICA H. MACDONALD
                                             United States Attorney

                                             s/ *Benjamin F. Langner*

                                             BY: BENJAMIN F. LANGNER
                                             DAVID J. MACLAUGHLIN
                                             Assistant U.S. Attorneys

                                             BRIAN L. LEVINE
                                             Senior Counsel
                                             United States Department of Justice