4DIV,CLOSED,TPJOUT,crmdt

# U.S. District Court
## U.S. District of Minnesota (DMN)
## CRIMINAL DOCKET FOR CASE #: 0:16−cr−00334−JNE−KMM−2
### *Internal Use Only*

Case title: USA v. Hansmeier et al

Date Filed: 12/14/2016

Date Terminated: 07/10/2019

---

Assigned to: Judge Joan N. Ericksen
Referred to: Magistrate Judge Katherine M Menendez (mj)

**Defendant (2)**

| | |
|---|---|
| **John L Steele**<br>*TERMINATED: 07/10/2019* | represented by **Mark Eiglarsh**<br>Law Offices of Mark Eiglarsh<br>3107 Stirling Road<br>Suite 207<br>Fort Lauderdale, FL 33312<br>305−674−0003<br>Email: mark@eiglarshlaw.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained*<br><br>**Peter B Wold**<br>Wold Morrison Law<br>TriTech Center, Suite 705<br>331 Second Avenue South<br>Minneapolis, MN 55401<br>612−341−2525<br>Fax: 612−341−0116<br>Email: pwold@wold−law.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

**Pending Counts**

18:1349 CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD
(1)

**Disposition**

Custody of BOP for 60 months as to Count 1 and 60 months as to Count 17 to be served concurrently; 2 years Supervised Release to be served concurrently; $200 Special Assessment; $1,541,527.37 Restitution.

1

| | |
|---|---|
| 18:1956(h) CONSPIRACY TO COMMIT MONEY LAUNDERING (17) | Custody of BOP for 60 months as to Count 1 and 60 months as to Count 17 to be served concurrently; 2 years Supervised Release to be served concurrently; $200 Special Assessment; $1,541,527.37 Restitution. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1341 and 2 MAIL FRAUD (2−6) | Dismissed |
| 18:1343 and 2 WIRE FRAUD (7−16) | Dismissed |
| 18:371 CONSPIRACY TO COMMIT AND SUBORN PERJURY (18) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| USA | represented by | **Ana H Voss**<br>United States Attorney's Office<br>300 S 4th St Ste 600<br>Minneapolis, MN 55415<br>612−664−5600<br>Fax: 612−664−5788<br>Email: ana.voss@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **David J MacLaughlin**<br>United States Attorney's Office<br>300 S 4th St Ste 600<br>Minneapolis, MN 55415<br>(612) 664−5600<br>Email: david.maclaughlin@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Erin M Secord**
United States Attorney's Office
300 S 4th St Ste 600
Minneapolis, MN 55415
612−664−5611
Email: erin.secord@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin F Langner**
United States Attorney's Office
300 S 4th St Ste 600
Minneapolis, MN 55415
612−664−5636
Fax: 612−664−5787
Email: benjamin.langner@usdoj.gov
*TERMINATED: 06/01/2022*
*Designation: Retained*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/14/2016 | 1 | | INDICTMENT assigned to Judge Joan N. Ericksen referred to Magistrate Judge Katherine M. Menedez by USA Benjamin F. Langner as to Paul R Hansmeier (1) counts 1−18, John L Steele (2) counts 1−18. Forfeiture allegations as to this indictment. (LPH) Document QC'd by mkg. Modified text on 12/23/2016 (MKG). (Entered: 12/15/2016) |
| 12/14/2016 | 2 | | Defendant Information Sheet as to Paul R Hansmeier, John L Steele. (Attachments: # 1 Original Signature Page) (LPH) Document QC'd by mkg. Modified text on 12/23/2016 (MKG). (Entered: 12/15/2016) |
| 12/14/2016 | 4 | | Bench Warrant Issued as to John L Steele by Judge Ann D. Montgomery. (LPH) (Entered: 12/15/2016) |
| 12/14/2016 | 5 | | ORAL MOTION to Seal Under 49.1(d) until the defendants make an initial appearance by USA as to Paul R Hansmeier, John L Steele. (LPH) (Entered: 12/15/2016) |
| 12/14/2016 | 6 | | ORAL ORDER granting 5 Oral Motion to Seal Under 49.1(d) until the defendants make an initial appearance as to Paul R Hansmeier (1), John L Steele (2) by Judge Ann D. Montgomery on 12/14/16. (LPH) Modified text on 12/15/2016 (LPH). (Entered: 12/15/2016) |
| 12/16/2016 | 7 | | MOTION to Unseal by USA as to Paul R Hansmeier, John L Steele. (LPH) Document QC'd by JLW on 1/11/2017 (JLW). (Entered: 12/16/2016) |
| 12/16/2016 | 8 | | ORDER granting 7 Motion to Unseal as to Paul R Hansmeier (1), John L Steele (2). Signed by Judge Joan N. Ericksen on 12/16/16. (LPH) cc: USA. Modified text on 12/29/2016 (LPH). Document QC'd by JLW on 1/11/2017 (JLW). (Entered: 12/16/2016) |

| 12/19/2016 | 13 | | Rule 5(c) (3) Documents Received from Southern District of Florida; defendant arrested, appeared and released on 12/16/16 as to John L Steele. (LPH) Document QC'd by JLW on 12/29/2016 (JLW). (Entered: 12/19/2016) |
|---|---|---|---|
| 12/19/2016 | 14 | | RESTRICTED: Restricted Bond Documents from the Southern District of Florida as to John L Steele. (LPH) Document QC'd by JLW on 12/29/2016 (JLW). (Entered: 12/19/2016) |
| 12/23/2016 | 31 | | Bench Warrant Returned Executed on 12/16/2016 as to John L Steele. (MMG) Document QC'ed on 2/7/2017 (MMG). (Entered: 01/18/2017) |
| 01/04/2017 | 20 | | ORDER/NOTICE OF HEARING as to John L Steele. Arraignment set for 1/9/2017 09:00 AM in Courtroom 8E (MPLS) before Magistrate Judge Katherine M. Menendez. Signed by Magistrate Judge Katherine M. Menendez on 1/4/17. (LPH) (Entered: 01/04/2017) |
| 01/06/2017 | 21 | | AMENDED NOTICE/ORDER OF HEARING as to John L Steele. Initial Appearance and Arraignment set for 1/9/2017 09:00 AM in Courtroom 8E (MPLS) before Magistrate Judge Katherine M. Menendez. Signed by Magistrate Judge Katherine M. Menendez on 1/6/17. (LPH) (Entered: 01/06/2017) |
| 01/09/2017 | 22 | | Minute Entry for proceedings held before Magistrate Judge Katherine M. Menendez; Initial Appearance as to John L Steele held on 1/9/2017; retained counsel present; Defendant released on same conditions imposed by the court in the Southern District of Florida, see doc 13 . Defendant also arraigned at this hearing, see separate arraignment minutes. (JLW) (Entered: 01/09/2017) |
| 01/09/2017 | 23 | | Minute Entry for proceedings held before Magistrate Judge Katherine M. Menendez: Arraignment as to John L Steele (2) Count 1,2–6,7–16,17,18 held on 1/9/2017. Not Guilty Plea Entered. Disclosure due by 1/17/2017. Motions due by 1/30/2017. Jury Trial set for 3/13/2017 09:30 AM in Courtroom 12W (MPLS) before Judge Joan N. Ericksen. Motion Hearing set for 2/28/2017 01:00 PM in Courtroom 8E (MPLS) before Magistrate Judge Katherine M. Menendez. Voir Dire/Jury Instructions deadline due by 3/6/2017. (JLW) (Entered: 01/09/2017) |
| 01/09/2017 | 24 | | NOTICE OF ATTORNEY APPEARANCE/SUBSTITUTION for John L Steele. (Wold, Peter) (Entered: 01/09/2017) |
| 01/09/2017 | 25 | | ARRAIGNMENT ORDER as to John L Steele. Signed by Magistrate Judge Katherine M. Menendez on 1/9/17. (Attachments: # 1 LR 12.1) (JLW) (Entered: 01/09/2017) |
| 01/09/2017 | 26 | | MOTION for Admission Pro Hac Vice for Attorney Mark Eiglarsh. Filing fee $ 100, receipt number AMNDC–5279867 by John L Steele. (Wold, Peter) (Entered: 01/09/2017) |
| 01/11/2017 | 27 | | TEXT ONLY ENTRY: ORDER granting 26 Motion for Admission Pro Hac Vice of Attorney Mark Eiglarsh for John L Steele (2). Approved by Magistrate Judge Katherine M. Menendez on 1/11/17. (MAM) (Entered: 01/11/2017) |
| 01/12/2017 | 28 | | NOTICE *OF PERMANENT APPEARANCE* by John L Steele (Eiglarsh, Mark) (Entered: 01/12/2017) |
| 01/17/2017 | 29 | | |

| | | | |
|---|---|---|---|
| | | | RECEIPT number 44641092080 in the amount of $10,000.00 received from the Southern District of Florida re: Appearance Bond as to John L Steele. (MKG) Qc'd on 2/23/2017 (KNK). (Entered: 01/17/2017) |
| 01/30/2017 | 34 | | MOTION for Discovery by USA as to John L Steele. (MacLaughlin, David) (Entered: 01/30/2017) |
| 02/02/2017 | 35 | | TEXT–ONLY NOTICE OF SETTING CHANGE OF PLEA as to John L Steele. Change of Plea Hearing set for 3/6/2017 at 09:30 AM in Courtroom 12W (MPLS) before Judge Joan N. Ericksen. (CBC) (Entered: 02/02/2017) |
| 02/24/2017 | 39 | | Release Status Report to the Court as to John L Steele. (Attachments: # 1 Order)(JMM) (Entered: 02/24/2017) |
| 02/27/2017 | 40 | | Order Modifying Conditions of Pretrial Release as to John L Steele. Signed by Judge Joan N. Ericksen on February 27, 2017. (CBC) (Entered: 02/27/2017) |
| 03/06/2017 | 41 | | Minute Entry for proceedings held before Judge Joan N. Ericksen: Plea Agreement Hearing as to John L Steele held on 3/6/2017. Plea entered by John L Steele (2) Guilty as to Counts 1 and 17. (Court Reporter Maria Weinbeck) (KRK) Per Chambers, entry restricted to case participants only. Modified text on 3/6/2017 (lmb). (Entered: 03/06/2017) |
| 03/06/2017 | 42 | | Amended Minute Entry for proceedings held before Judge Joan N. Ericksen: Plea Agreement Hearing as to John L Steele held on 3/6/2017. Plea entered by John L Steele (2) Guilty as to Counts 1 and 17. (Court Reporter Maria Weinbeck) (KRK) (Entered: 03/06/2017) |
| 03/06/2017 | 43 | | PLEA AGREEMENT as to John L Steele. (LPH) Document QC'ed on 3/10/2017 (MMG). (Entered: 03/06/2017) |
| 03/21/2017 | 45 | | NOTICE of Filing of Official Transcript as to John L Steele. This filing has 1 transcript(s) associated with it. (MVW) (Entered: 03/21/2017) |
| 03/21/2017 | 46 | | TRANSCRIPT of Change of Plea Hearing held on 03/06/2017 before Judge Joan N. Ericksen as to John L Steele. (32 pages). Court Reporter: Maria Weinbeck. For a copy of the transcript, please file a Transcript Request under *Other Filings/Other Documents*. <br><br> For information on redaction procedures, please review Local Rule 5.5. Redaction Request due 4/11/2017. Redacted Transcript Deadline set for 4/21/2017. Release of Transcript Restriction set for 6/19/2017. (MVW) (Entered: 03/21/2017) |
| 08/21/2017 | 74 | | TRANSCRIPT REQUEST by USA as to Paul R Hansmeier for a COPY OF 65 Transcript(s) to Court Reporter Staci Heichert. (Langner, Benjamin) Modified text on 8/23/2017 (LEG). (Entered: 08/21/2017) |
| 01/16/2018 | 77 | | Proposed Petition for Modification of Pretrial Release as to John L Steele. (SC) (Entered: 01/16/2018) |
| 01/17/2018 | 78 | | ORDER granting 77 Petition for Modification of Pretrial Release as to John L Steele (2). Signed by Judge Joan N. Ericksen on January 17, 2018. (CBC) (Entered: 01/17/2018) |
| 08/15/2018 | 98 | | |

| | | | |
|---|---|---|---|
| | | | Proposed Petition for Modification of Pretrial Release as to John L Steele. (JMM) (Entered: 08/15/2018) |
| 08/15/2018 | 99 | | Pretrial Release: Modification of Conditions as to John L Steele 98 Proposed Petition/Order re: Supervision.. (JMM) (Entered: 08/15/2018) |
| 08/20/2018 | 104 | | ORDER granting 98 Petition for Modification of Pretrial Release as to John L Steele (2). Signed by Judge Joan N. Ericksen on 8/20/2018. (CBC) (Entered: 08/20/2018) |
| 12/10/2018 | 110 | | Letter to the Court re: Preliminary Notice as to John L Steele. (TMK) (Entered: 12/10/2018) |
| 01/16/2019 | 115 | | EXHIBIT *CHARACTER LETTERS* by John L Steele (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s)) (Eiglarsh, Mark) (Entered: 01/16/2019) |
| 01/22/2019 | 116 | | PRESENTENCE REPORT/ADDENDUM as to John L Steele. (SC) (Entered: 01/22/2019) |
| 01/24/2019 | 118 | | NOTICE *ATTORNEY'S CHANGE OF ADDRESS* by John L Steele (Eiglarsh, Mark) (Entered: 01/24/2019) |
| 02/28/2019 | 122 | | POSITION ON SENTENCING/SENTENCING MEMORANDUM by USA as to John L Steele (Langner, Benjamin) (Entered: 02/28/2019) |
| 03/04/2019 | 123 | | POSITION ON SENTENCING/SENTENCING MEMORANDUM by John L Steele (Eiglarsh, Mark) (Entered: 03/04/2019) |
| 05/03/2019 | 129 | | (Text–only) NOTICE of Setting Sentencing as to John L Steele: Sentencing set for 7/9/2019 at 09:30 AM in Courtroom 12W (MPLS) before Judge Joan N. Ericksen. (CBC) (Entered: 05/03/2019) |
| 07/03/2019 | 155 | | Release Status Report to the Court as to John L Steele. (SC) (Entered: 07/03/2019) |
| 07/08/2019 | 156 | | EXHIBIT by John L Steele (Eiglarsh, Mark) Modified Restriction to filer and court users per Judge Ericksen's chambers on 7/8/2019 (lmb). (Entered: 07/08/2019) |
| 07/09/2019 | 157 | | Minute Entry for proceedings held before Judge Joan N. Ericksen: Sentencing held on 7/9/2019 for John L Steele. (Court Reporter Maria Weinbeck) (MAH) (Entered: 07/09/2019) |
| 07/10/2019 | 162 | | SENTENCING JUDGMENT as to John L Steele (2), SENTENCED to Counts 1, 17, Custody of BOP for 60 months as to Count 1 and 60 months as to Count 17 to be served concurrently; 2 years Supervised Release to be served concurrently; Total Special Assessment $200.00; Total Restitution $1,541,527.37; Remaining Counts Dismissed. Signed by Judge Joan N. Ericksen on 7/9/2019. (KNK) Modified text on 7/15/2019 (KNK). (Entered: 07/10/2019) |
| 07/10/2019 | 163 | | Statement of Reasons as to John L Steele (Restricted Document). (cc: FLU and USA Close Out Unit) (KNK) (Entered: 07/10/2019) |
| 07/11/2019 | 164 | | Letters, E–mails, and Other Sentencing Hearing Materials by John L Steele (Restricted Document). (Entered: 07/11/2019) |

| 07/25/2019 | 165 | | TRANSCRIPT REQUEST for a 30–Day Transcript of 157 Sentencing to Court Reporter Maria Weinbeck. (Atwal, Manvir) (Entered: 07/25/2019) |
| 08/23/2019 | 167 | | NOTICE of Filing of Official Transcript as to John L Steele. This filing has 1 transcript(s) associated with it. (MVW) (Entered: 08/23/2019) |
| 08/23/2019 | 168 | | TRANSCRIPT of Sentencing Hearing held on 07/09/19 before Judge Joan N. Ericksen as to John L Steele. (39 pages). Court Reporter: Maria Weinbeck. For a copy of the transcript, please file a Transcript Request under *Other Filings/Other Documents*. |
| | | | For information on redaction procedures, please review Local Rule 5.5. Redaction Request due 9/13/2019. Redacted Transcript Deadline set for 9/23/2019. Release of Transcript Restriction set for 11/21/2019. (MVW) (Entered: 08/23/2019) |
| 09/04/2020 | 179 | | MOTION FOR IMMEDIATE PARTIAL PAYMENT FROM CASH BOND by USA as to John L Steele. (Secord, Erin) Modified text on 9/9/2020 (MMG). (Entered: 09/04/2020) |
| 09/04/2020 | 180 | | MEMORANDUM in Support by USA as to John L Steele re 179 MOTION FOR IMMEDIATE PARTIAL PAYMENT FROM CASH BOND (Secord, Erin) (Entered: 09/04/2020) |
| 09/04/2020 | 181 | | PROPOSED ORDER TO JUDGE re 179 MOTION FOR IMMEDIATE PARTIAL PAYMENT FROM CASH BOND by USA as to John L Steele (Secord, Erin) (Entered: 09/04/2020) |
| 09/04/2020 | 182 | | Certificate of Service by USA as to John L Steele re 181 Proposed Order to Judge, 179 MOTION FOR IMMEDIATE PARTIAL PAYMENT FROM CASH BOND , 180 Memorandum in Support of Motion . (Secord, Erin) (Entered: 09/04/2020) |
| 09/09/2020 | 183 | | DOCUMENT FILED IN ERROR–ORDER granting 179 MOTION FOR IMMEDIATE PARTIAL PAYMENT FROM CASH BOND by USA as to John L Steele. Signed by Judge Joan N. Ericksen on 9/9/2020. (CBC) Modified text on 9/9/2020 (MMG). (Entered: 09/09/2020) |
| 09/09/2020 | 184 | | Amended MOTION For Immediate Partial Payment from Cash Bond by USA as to John L Steele. (Secord, Erin) (Entered: 09/09/2020) |
| 09/09/2020 | 185 | | PROPOSED ORDER TO JUDGE re 184 Amended MOTION For Immediate Partial Payment from Cash Bond by USA as to John L Steele (Secord, Erin) (Entered: 09/09/2020) |
| 09/09/2020 | 186 | | Certificate of Service by USA as to John L Steele re 185 Proposed Order to Judge, 184 Amended MOTION For Immediate Partial Payment from Cash Bond . (Secord, Erin) (Entered: 09/09/2020) |
| 09/09/2020 | 187 | | ORDER granting 184 Amended MOTION For Immediate Partial Payment from Cash Bond by USA as to John L Steele (2). Signed by Judge Joan N. Ericksen on 9/9/2020. (CBC) (Entered: 09/09/2020) |
| 05/27/2021 | 191 | | NOTICE *WAIVER AND ORDER MODIFICATION OF SUPERVISED RELEASE CONDITIONS* by John L Steele (Eiglarsh, Mark) (Entered: 05/27/2021) |

| 09/21/2021 | 202 | | Supervised Release: Modification of Conditions as to John L Steele. Judicial Acknowledgment Requested. (DG) (Entered: 09/21/2021) |
|---|---|---|---|
| 09/21/2021 | 203 | | Proposed Petition for Modification of Supervised Release 202 Report as to John L Steele. (DG) (Entered: 09/21/2021) |
| 09/21/2021 | 204 | | HEARING WAIVER by John L Steele re: 203 Proposed Petition for Modification of Conditions. (DG) (Entered: 09/21/2021) |
| 09/24/2021 | 205 | | Acknowledgment by Judge re: Supervised Release 202 Modification of Conditions as to John L Steele. Signed by Judge Joan N. Ericksen on 9/23/2021. (CBC) (Entered: 09/24/2021) |
| 09/24/2021 | 206 | | ORDER granting 203 Petition for Modification of Supervised Release as to John L Steele (2). Signed by Judge Joan N. Ericksen on 9/23/2021. (CBC) (Entered: 09/24/2021) |
| 07/15/2022 | 237 | | TRANSFER OF JURISDICTION ORDER to District of Arizona as to John L Steele. Signed by Judge Joan N. Ericksen on 6/14/2022. (KNK) (Entered: 07/15/2022) |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 16·334 JNE/KMM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| | ) | |
| Plaintiff, | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1341 |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1956(h) |
| PAUL R. HANSMEIER and | ) | 18 U.S.C. § 371 |
| JOHN L. STEELE, | ) | 18 U.S.C. § 2 |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

## OVERVIEW

1.      Between 2011 and 2014, defendants Paul R. HANSMEIER and John L. STEELE orchestrated an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country. In order to carry out the scheme, the defendants used sham entities to obtain copyrights to pornographic movies—some of which they filmed themselves—and then uploaded those movies to file-sharing websites in order to lure people to download the movies.   To learn the identities of the people caught in the trap they constructed, HANSMEIER and STEELE filed specious copyright infringement lawsuits and fraudulently procured permission from courts to send subpoenas to internet service providers for subscriber information associated with the IP addresses used to download their pornographic movies.   After receiving this information, the defendants—through extortionate letters and phone calls—threatened the subscribers with enormous financial penalties and public embarrassment unless the

SCANNED
DEC 1 4 2016
U.S. DISTRICT COURT MPLS

U.S. v. Paul Hansmeier et al.

subscribers agreed to pay a settlement, all the while concealing their collusion in the alleged copyright infringement. When courts restricted their ability to sue multiple individuals in the same lawsuit, the defendants shifted tactics. They filed lawsuits falsely alleging that computer systems purportedly belonging to their sham clients had been infiltrated by hackers, and then recruited ruse defendants against whom they brought these illusory "hacking" lawsuits. Finally, when courts became suspicious of the defendants' tactics and motives, the defendants began a long process of lies and deceit designed to conceal the truth and deflect responsibility from themselves. In total, the defendants obtained approximately $6,000,000 made possible by the fraudulent copyright lawsuits they peddled to courts throughout the country.

## INTRODUCTION

At times relevant to this Indictment:

2. Defendant Paul R. HANSMEIER was an attorney licensed to practice law in the State of Minnesota.

3. Defendant John L. STEELE was an attorney licensed to practice law in the State of Illinois.

4. Under both the Minnesota and Illinois rules of professional conduct governing attorneys, HANSMEIER and STEELE owed a duty of "candor" to the court not to make false statements or cause false statements to be made to any court, and to correct any false statements that had already been made. In an *ex parte* proceeding—where only

2

one of the parties to a lawsuit are communicating with a judge—HANSMEIER and STEELE were obligated to advise the court of all material facts, whether or not the facts were adverse to their position.

5.     In a lawsuit, parties generally participate in a "discovery" process whereby they are able to obtain potentially relevant information and documents from the opposing party as well as third parties.   Under certain circumstances, a party to a lawsuit may be able to obtain "early" discovery—before it would normally be available to the party— through an *ex parte* proceeding in order to obtain evidence necessary to allow the lawsuit to proceed, such as the identity of the opposing party.   If the evidence is in the possession of a third party, the person seeking early discovery must obtain permission from the court to send a "subpoena" to the third party, which compels the third party to turn over the evidence.

### *BitTorrent*

6.     BitTorrent websites, including a website named the Pirate Bay, allow users to share movies or other copyrighted files with one another without paying any fees to the copyright holder.   Many BitTorrent websites store their servers in foreign countries, allow users to participate anonymously (only requiring a user-generated screen-name), and take other measures to cloak the activities taking place on the website.

7.     Under the "BitTorrent" protocol, an initial "seeder" uses BitTorrent software to divide a video (or other file) into small pieces and creates a "torrent" file, which contains

U.S. v. Paul Hansmeier et al.

metadata about the file and about the computer/server that coordinates distribution of the file, which is referred to as the "tracker." The "seeder" then uploads the torrent file to a file-sharing website such as Pirate Bay, and makes the partitioned video available to other users. Individuals interested in obtaining the video—referred to as "peers" or "users"— first download the torrent file from the file-sharing website and open the torrent file with BitTorrent software on their computers. Upon opening the torrent file, BitTorrent software contacts the tracker to find out what computers are online, and then seeks individual pieces of the video from those other computers. Initially, the pieces will be downloaded by peers directly from the seeder, but as more peers obtain pieces of the video, they will share those pieces with one another. Thus, the "seeder" does not actually "upload" the video to a website, but rather uploads a torrent file that makes it possible for individuals to obtain the video from the seeder and others.

### *Defendants' Entities and Associates*

8.     Steele Hansmeier PLLC was a law firm controlled and operated by defendants HANSMEIER and STEELE. Beginning no later than in or about 2010 and continuing at least until in or about November 2011, the defendants utilized Steele Hansmeier PLLC to bring copyright infringement lawsuits on behalf of purported clients.

9.     Prenda Law Inc. was a law firm nominally owned by an Illinois lawyer named P.D., but was in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE. Beginning in or about November 2011, and continuing until

4

12

2013, defendants HANSMEIER and STEELE used Prenda Law to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

10.     Anti-Piracy Law Group was a law firm nominally owned by P.D., but in fact substantially controlled and beneficially owned by defendants HANSMEIER and STEELE.  In or about 2013, defendants HANSMEIER and STEELE used Anti-Piracy Law Group to cause copyright infringement lawsuits to be filed and collect settlements on behalf of purported clients.

11.     M.L. worked for HANSMEIER and STEELE.  M.L. was paid a salary at various times by Steele Hansmeier PLLC and Prenda Law.  M.L. generally worked as a paralegal whose duties included making phone calls and sending letters to purported copyright infringers threatening legal action unless they paid a settlement fee.  M.L. worked in offices located in Chicago, Las Vegas, and Miami with STEELE, and generally took direction from STEELE.

12.     P.H. worked for HANSMEIER and STEELE.  P.H. at times received payment from the defendants through entities named Media Copyright Group and 6881 Forensics.  P.H. generally worked as a computer forensic consultant who monitored BitTorrent file-sharing websites and attempted to track IP addresses that downloaded or attempted to download certain pornographic movies associated with purported clients of Steele Hansmeier PLLC, Prenda Law, and Anti-Piracy Law Group.  P.H. also assisted in the preparation of legal documents, such as affidavits supporting requests for early

5

U.S. v. Paul Hansmeier et al.

discovery for copyright infringement lawsuits filed by Steele Hansmeier PLLC, Prenda Law, Anti-Piracy Law Group, and their purported clients. P.H. worked in multiple offices located in Minneapolis with HANSMEIER, and generally took direction from HANSMEIER.

13. AF Holdings LLC and Ingenuity 13 LLC were entities that HANSMEIER and STEELE caused to be founded under the laws of St. Kitts and Nevis, an island country located in the Caribbean Sea. AF Holdings and Ingenuity 13 were purportedly owned by a trust managed by and benefitting M.L., but HANSMEIER and STEELE were the *de facto* owners of AF Holdings and Ingenuity 13. HANSMEIER and STEELE used AF Holdings and Ingenuity 13 as sham clients that purportedly owned copyrights to pornographic movies or operated computer systems associated with pornographic movies, but which the defendants in fact owned and controlled themselves.

14. Guava LLC, Livewire Holdings LLC, and LW Systems LLC were U.S.-based entities that HANSMEIER and STEELE caused to be created. Guava, Livewire, and LW Systems were purportedly owned and/or controlled by M.L., but HANSMEIER and STEELE were the *de facto* owners of the entities. HANSMEIER and STEELE used Guava, Livewire, and LW Systems as sham clients that purportedly owned copyrights to pornographic movies or operated computer systems associated with pornographic movies, but which they in fact owned and controlled themselves.

6

U.S. v. Paul Hansmeier et al.

## COUNT 1
(Conspiracy to Commit Mail Fraud and Wire Fraud)
18 U.S.C. § 1349

15.     The allegations contained in paragraphs 1 through 14 of this Indictment are re-alleged as if stated in full herein.

16.     Beginning no later than in or about 2011 and continuing at least until in or about 2014, in the State and District of Minnesota and elsewhere, the defendants,

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

did knowingly conspire with each other and with others to devise and participate in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, and for the purpose of executing such scheme and artifice, and attempting to do so: (a) caused the sending, delivering and receipt of various matters and things by United States Postal Service and private and commercial interstate carrier; and (b) caused the transmission in interstate commerce, by means of wire communications, of certain writings, signs, signals, pictures and sounds.

17.     More specifically, beginning at least as early as 2011, and continuing until in or about 2014, Paul HANSMEIER and John STEELE executed a scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country.   HANSMEIER and STEELE—both lawyers—used sham

7

U.S. v. Paul Hansmeier et al.

entities they controlled to obtain copyrights to pornographic movies, some of which they filmed themselves. The defendants then uploaded the movies to file-sharing websites hoping to lure people into downloading their movies. When HANSMEIER and STEELE ensnared someone in their trap, they filed false and deceptive copyright infringement lawsuits that concealed their role in distributing the movies, as well as their significant personal stake in the outcome of the litigation. After coercing courts into giving them the power to subpoena internet service providers and thereby identify the subscriber who controlled the IP address used to download the movie, the defendants used extortionate tactics to garner quick settlements from individuals who were unaware of the defendants' role in uploading the movie, and often were either too embarrassed or could not afford to defend themselves. When these individuals did fight back, the defendants dismissed the lawsuits rather than risk their scheme being unearthed. After courts began limiting the number of people that HANSMEIER and STEELE could sue in one lawsuit, they changed tactics and began filing lawsuits falsely alleging that computer systems belonging to certain of their sham clients had been "hacked" and recruited ruse defendants to smooth their path to obtain authority from courts to subpoena internet service providers. Furthermore, when courts began questioning the defendants' tactics, the defendants repeatedly lied and caused others to lie in order to conceal the true nature of their scheme.

8

## Initial Copyright Infringement Lawsuits Brought by Defendants

18.     Beginning in or about September 2010, defendants HANSMEIER and STEELE—using the law firm Steele Hansmeier PLLC—began representing individuals and entities that owned copyrights to pornographic movies.  Defendants and their agents monitored file-sharing websites and obtained IP Addresses of individuals who downloaded or attempted to download their clients' movies.  Defendants then filed copyright infringement lawsuits against these anonymous individuals, sometimes referred to as "John Does," and sought authority from the court—often referred to as "early discovery"—to subpoena internet service providers for subscriber information associated with the IP Addresses.

19.     After receiving the subscriber information, defendants engaged in aggressive settlement tactics.  Defendants made phone calls and sent letters to the subscribers associated with targeted IP Addresses in which they threatened overwhelming financial penalties—the copyright statute permits plaintiffs to recover damages of up to $150,000 per infringement—and public disclosure unless the purported infringers agreed to pay a settlement of approximately $4,000.  Many of the individuals who received the defendants' letters and phone calls agreed to pay the settlement rather than incur the expense of defending the lawsuit—which would undoubtedly exceed the settlement amount—or risk being publicly shamed for allegedly downloading pornographic movies.

## Uploading Clients' Movies to File-Sharing Websites

20.     Beginning in or about April 2011, defendants caused P.H. to upload their clients' pornographic movies to BitTorrent file-sharing websites, including a website named the Pirate Bay, in order to entice people to download the movies and make it easier to catch those who attempted to obtain the movies.   As defendants knew, the BitTorrent websites to which they uploaded their clients' movies were specifically designed to allow users to share files, including movies, without paying any fees to the copyright holders. Thus, defendants knowingly caused their clients' movies to be shared and distributed on BitTorrent websites, and thereby purposely allowed and authorized the BitTorrent users to obtain their clients' movies.

21.     Thereafter, despite colluding in the purported infringement of their clients' copyrights, HANSMEIER and STEELE caused lawsuits to be filed disingenuously alleging that the individuals who purportedly downloaded the movie did so "without authorization" or consent from the copyright holder or its agents.

22.     For example, on or about April 1, 2011, P.H. uploaded a movie named "Sexual Obsession," which was owned by a client of the defendants named Heartbreaker Productions, to the Pirate Bay.   On or about April 28, 2011, after catching approximately 71 IP Addresses engaged in downloading the movie Sexual Obsession, which defendants had caused to be uploaded, the defendants filed a lawsuit in federal court in Illinois on behalf of Heartbreaker Productions misleadingly alleging that the 71 "John Does" had

10

downloaded the movie without "authorization or license" from Heartbreaker Productions. On or about April 29, 2011, the defendants filed an *ex parte* motion seeking to obtain early discovery regarding the identities of the subscribers associated with the 71 IP addresses, and therein falsely and misleadingly represented to the court that the John Does "without authorization[] used an online peer-to-peer ("P2P") media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public … by making Plaintiff's copyrighted works available for distribution to others." After obtaining authority to subpoena internet service providers for subscriber information associated with the 71 IP Addresses, the defendants dismissed the lawsuit in order to "engage in settlement efforts or, if necessary, [file] separate actions."

23. Thereafter, between April 2011 and approximately December 2012, defendants HANSMEIER and STEELE caused at least approximately 200 fraudulent copyright infringement lawsuits to be filed in courts throughout the country seeking subscriber information associated with more than 3,000 IP Addresses based on the spurious allegation that certain IP Addresses were caught illegally downloading either Sexual Obsession or another movie owned by Heartbreaker Productions named "Popular Demand" from the Pirate Bay or other BitTorrent websites, which defendants themselves uploaded and made available for people to download. After filing each of the fraudulent lawsuits, HANSMEIER and STEELE filed or caused to be filed *ex parte* motions for early discovery that failed to disclose their involvement in uploading the copyrighted movies,

11

and falsely accused the purported downloader of obtaining the movie without authorization or consent. Courts throughout the country, relying on the false and misleading representations made or caused to be made by the defendants, granted early discovery and thereby authorized the defendants to subpoena internet service providers for subscriber information associated with the IP Addresses set forth in the motions and/or civil complaints.

24. After receiving the subscriber information, HANSMEIER and STEELE employed the same tactics they previously used in order to garner quick settlements from the subscribers they identified. However, defendants falsely represented to the subscribers that they and their clients had legitimate copyright infringement claims against the subscriber when, in fact and as defendants knew, they had uploaded to the BitTorrent website the very movie that they now threatened to sue the subscriber for downloading. By lying to courts in order to obtain subscriber information and deceiving the subscribers, defendants fraudulently obtained numerous settlement payments.

**Defendants Attempt to Obscure Their Involvement in the Scheme**

25. In or about November 2011, in order to distance themselves from the fraudulent copyright infringement lawsuits and any potential fallout, defendants caused Prenda Law to be created. Although P.D. nominally owned Prenda Law, and at times provided assistance to HANSMEIER and STEELE in filing and overseeing the copyright litigation, HANSMEIER and STEELE exerted *de facto* control over Prenda Law, including

12

the primary direction of its employees and dispensation of its finances. Despite controlling Prenda Law, and at various times filing appearances for or in connection with Prenda Law, HANSMEIER and STEELE on multiple occasions falsely denied to various courts any direct involvement with or control over Prenda Law. Beginning in or about 2013, defendants at times also used the name Anti-Piracy Law Group, which was nominally controlled by P.D., to pursue their copyright infringement and associated litigation.

26. Beginning in or about 2011, defendants also created and/or employed various sham entities, including AF Holdings, Ingenuity 13, Guava, Livewire Holdings, and LW Systems as plaintiffs or otherwise to further their fraudulent copyright lawsuits.

a. **AF Holdings.** In or about 2011, defendants convinced R.R., the owner of Heartbreaker Productions, to transfer the copyrights to Sexual Obsession and Popular Demand to AF Holdings, supposedly to insulate R.R. from negative publicity surrounding the copyright infringement lawsuits. In order to disguise their control over AF Holdings, defendants used the name of an acquaintance of STEELE—whose initials are A.C.—to purportedly sign on behalf of AF Holdings on the copyright transfer agreement. Furthermore, defendants represented and caused to be represented to multiple courts that AF Holdings was owned by a trust named "Salt Marsh" whose manager and sole beneficiary was M.L., the paralegal employed by HANSMEIER and STEELE. In fact, and as defendants knew, M.L. was nothing more than a figurehead who agreed to pose

13

21

as the owner of AF Holdings in order to help HANSMEIER and STEELE obscure their ownership and control over the company.

b. **Ingenuity 13.** Defendants caused Ingenuity 13 to be formed, and beginning in about 2011, defendants used Ingenuity 13 to obtain copyrights over pornographic films, some of which they filmed themselves. Thereafter, defendants caused copyright infringement lawsuits to be filed on behalf of Ingenuity 13. Defendants at times used A.C.'s name to sign on behalf of Ingenuity 13, and on other occasions falsely represented that Ingenuity 13 was owned or controlled by M.L.; in fact, Ingenuity 13 was at all times controlled by the defendants, and the defendants received the proceeds of settlement payments generated by lawsuits filed on behalf of Ingenuity 13.

c. **Guava.** Defendants caused Guava to be formed, and beginning in about 2012, defendants used Guava to file lawsuits alleging that computer systems belonging to Guava had been hacked into, and seek early discovery regarding IP Addresses they falsely alleged had participated in the hacking activity. Defendants at times falsely represented that Guava was owned or controlled by M.L.; in fact, Guava was at all times controlled by the defendants.

d. **Livewire Holdings / LW Systems**. Defendants caused Livewire Holdings and LW Systems to be formed, and beginning in about 2013, defendants used Livewire and/or LW Systems to file lawsuits alleging that computer systems belonging to or associated with those entities had been hacked into, and seek early discovery regarding

14

IP Addresses they falsely alleged had participated in the hacking activity. Defendants at times falsely represented that Livewire and LW Systems were owned or controlled by M.L.; in fact, those entities were at all times controlled by the defendants.

### Defendants Film Their Own Pornographic Movies and Upload Them to File-Sharing Websites

27. Beginning no later than in or about May 2012, defendants filmed and caused to be filmed pornographic movies in order to further their fraudulent scheme. On at least three separate occasions, while attending pornographic film conventions in Chicago, Miami, and Las Vegas, HANSMEIER and STEELE—at times assisted by P.D., M.L., and P.H.—contracted with adult film actresses and produced multiple short pornographic films. Afterwards, HANSMEIER and STEELE caused Ingenuity 13 to obtain copyrights to the films, which bore names such as "Five Fan Favorites" and "A Peek Behind the Scenes at the Show." HANSMEIER and STEELE did not publicly distribute or commercially release the movies they filmed. Instead, HANSMEIER instructed P.H. to upload the movies to file-sharing websites such as the Pirate Bay in order to catch, and threaten to sue, people who attempted to download the movies.

28. When the defendants caught people downloading their movies, they then caused fraudulent copyright infringement lawsuits to be filed in various courts throughout the country, which falsely alleged that certain "John Does" had downloaded Ingenuity 13's movies "without Plaintiff's authorization," and thereby concealed from the courts that the

15

defendants—the lawyers behind the lawsuits—not only controlled the Plaintiff and therefore had a significant personal stake in the outcome of the litigation, but also had colluded to infringe their own copyrights by impliedly authorizing BitTorrent users to download the movies. Defendants also caused false representations to be made to the court in these lawsuits by alleging that Ingenuity 13 had suffered damages as a result of the John Does' conduct, when in fact the John Does' conduct had been the entire purpose of Ingenuity 13's existence.

### Defendants Invent Hacking Allegations

29. Beginning in or about October 2012, after courts had begun limiting the discovery defendants could obtain through copyright infringement lawsuits, HANSMEIER and STEELE caused lawsuits to be filed, generally on behalf of Guava LLC, falsely alleging that their client's computer systems had been "hacked," and that certain John Does used "hacked usernames/passwords to gain unlawful access to the member's section of [the client]'s website." The entirety of defendants' hacking lawsuits was a lie. In fact, Guava (and defendants' other phony clients) had no computer systems; they were sham entities created and controlled by the defendants for the sole purpose of obtaining lawsuit settlements.

30. After the Guava lawsuits were filed, defendants caused motions for early discovery to be filed which sought subscriber information associated with certain IP Addresses that had supposedly gained illegal access to Guava's computer systems. In

16

24

U.S. v. Paul Hansmeier et al.

fact, and as defendants' knew, the IP Addresses listed in the Guava complaints and motions for early discovery were IP Addresses that defendants had caught downloading their or their clients' pornographic movies through file-sharing websites on earlier occasions.

31.     In order to attempt to make the Guava lawsuits go smoothly and avoid difficult questions by the court, HANSMEIER and STEELE also recruited one or more ruse defendants.   The ruse defendants had been caught downloading one of HANSMEIER and STEELE's clients' movies from a file-sharing website.   The ruse defendants agreed that, in exchange for HANSMEIER and STEELE waiving a settlement payment, the ruse defendant would be sued and permit HANSMEIER and STEELE to seek discovery about his/her supposed "co-conspirators."   As defendants knew, the ruse defendants had not participated in any hacking activity, nor had they entered Guava's computer systems with hacked usernames and passwords.   In fact, they had downloaded movies belonging to an entirely different entity.   Nonetheless, HANSMEIER and STEELE brought several lawsuits against these fictitious defendants and falsely alleged that they had participated and/or benefitted from a non-existent cabal of hackers in order to attempt to obtain authority from the court to issue subpoenas to internet service providers to find additional people who they could extort.

17

U.S. v. Paul Hansmeier et al.

## Courts Accuse the Defendants of Deception and
## Defendants Lie to Cover Up Their Fraud

32.     In or about early 2013, courts began scrutinizing the defendant's litigation tactics.   Upon uncovering certain of the facts described above, courts began denying the defendants' requests to subpoena internet service providers, dismissing lawsuits that defendants had caused to be filed, accusing the defendants and their associates of deceptive and fraudulent behavior, and imposing sanctions against the defendants and their associates as a result of their misconduct.   For example, on or about May 6, 2013, the District Court for the Central District of California issued an order imposing sanctions against the defendants, and found that:

> Plaintiffs [including HANSMEIER and STEELE] have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared.   Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.   But this deception was calculated so that the Court would grant Plaintiff's early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them.   With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

The Court imposed monetary sanctions in the form of awarding attorneys' fees to the opposing party, referred HANSMEIER and STEELE to their respective state attorney disciplinary bodies, and notified all judges overseeing other copyright infringement cases filed by the defendants and their associated entities of the Court's findings.

18

U.S. v. Paul Hansmeier et al.

33.    In order to evade detection, further their scheme, and protect the illicit profits they had obtained, defendants repeatedly lied and caused others to lie, including but not limited to the following:

    a.    On or about November 27, 2012, the defendants caused M.L. to attend a hearing in Sunlust Pictures LLC v. Tuan Nguyen, 12-cv-1685 (M.D. Fla), and purport to be the corporate representative of Sunlust Pictures.   During the hearing, M.L. falsely and misleadingly testified under oath that he did not know P.D., when in fact he did, and was attending the hearing at the request of a woman named Sunny Leone when, in fact, STEELE had asked M.L. to attend the hearing.

    b.    On or about November 29, 2012, M.L. was deposed in Guava LLC v. Skylar Case, 2012 L 7363 (Cook Cty Cir. Ct.), and the defendants caused M.L. to falsely and misleadingly testify under oath that: (i) he was the VP in charge of legal matters for Guava; and (ii) Guava maintained computer systems that were "regularly" accessed by hackers, when in fact Guava was a shell company, M.L. had no real involvement with Guava, and the defendants had simply invented the hacking allegations in the complaint.

    c.    On or about January 25, 2013, in a hearing in Guava LLC v. Spencer Merkel, 27-cv-1220976 (Henn. Cty Dist. Ct.), STEELE falsely and misleadingly informed the court that Guava had "some computer equipment" in Illinois and Las Vegas and that certain unknown "John Does" had hacked into the computer equipment, when in fact Guava was a shell company and the defendants had simply invented the hacking allegations

19

in the complaint. In the same hearing, STEELE falsely and misleadingly denied that the defendants had reached a "deal" with Merkel whereby in exchange for the defendants waiving Merkel's payment of any settlement fee, Merkel had agreed to be sued so that the defendants could conduct discovery.

       d.    On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

       e.    On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances. In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings. HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

U.S. v. Paul Hansmeier et al.

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

      f.     On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings. The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

      g.     On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

21

      h.      On or about July 8, 2013, STEELE filed a complaint and caused M.L. to file a complaint with the State Bar of California against B.G., an attorney hired by HANSMEIER and STEELE to oversee copyright litigation on behalf of Prenda Law, wherein STEELE falsely and misleadingly claimed (and caused M.L. to claim) that M.L. was the manager of AF Holdings when, in fact, M.L. was merely a figurehead to obscure HANSMEIER and STEELE's control over AF Holdings. STEELE further falsely and misleading alleged in the bar complaints that B.G. was the primary attorney for AF Holdings, thereby falsely minimizing HANSMEIER and STEELE's affiliation with and control over AF Holdings.

      i.      On or about August 26, 2013, the defendants caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Min.), wherein M.L. falsely and misleadingly represented that the membership interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries are M.L.'s unborn children, and that M.L. was AF Holdings' managing member. In fact, AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a nominee to conceal the defendant's interest in AF Holdings.

      j.      On or about August 27, 2013, STEELE and HANSMEIER caused M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L. formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings,

U.S. v. Paul Hansmeier et al.

LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele, [P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney." In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings. In the same declaration, STEELE and HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he copyrights [AF Holdings] held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it"; and (iii) that litigation was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were obtained for the sole purpose of litigation and the copyrighted works were never made publically available for purchase by AF Holdings.

       k.      On or about August 28, 2013, HANSMEIER signed a declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned and controlled AF Holdings. In the same declaration, HANSMEIER falsely and

23

misleadingly claimed that "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files of any past client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing websites.

      l.     On or about September 30, 2013, STEELE falsely and misleadingly testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.) that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer document. STEELE further testified, falsely and misleadingly, that he had "no ownership interest, never had, in Prenda Law. I didn't set up a company, bogus or otherwise, AF Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their involvement in the scheme. During this hearing, HANSMEIER (acting as an attorney for AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth above.

      m.    On or about January 28, 2014, STEELE caused M.L. to falsely and misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262 (N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and HANSMEIER did not own any part of AF Holdings. M.L. further falsely and

misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and in the related copyright litigation.

n.     On or about April 8, 2015, STEELE falsely and misleadingly testified under oath in a deposition in Alan Cooper v. John Steele et al., 27-cv-13-3463 (Henn. Cty Dist. Ct.), that: (a) "I did not run or manage in any way AF Holdings;" (b) M.L. "operates" AF Holdings; and M.L. "runs" Guava LLC.   In fact, STEELE and HANSMEIER managed, operated, and controlled AF Holdings and Guava LLC.

34.     In total, between 2010 and 2013, defendants and their entities received more than $6,000,000 in copyright infringement settlement payments.  Of this amount, more than $3,000,000 was paid to or on behalf of Paul HANSMEIER and John STEELE.   Of the remaining amount, only approximately $1,000,000 was paid to clients of HANSMEIER and STEELE, and the rest was spent on expenses associated with carrying out the scheme.

All in violation of Title 18, United States Code, Sections 1349.

## COUNTS 2-6
(Mail Fraud)
18 U.S.C. § 1341

35.     The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

36.     On or about the following dates, in the State and District of Minnesota and elsewhere, the defendants,

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

having devised and intending to devise the scheme and artifice described above, caused to be sent, delivered, and moved by the United States Postal Service and private and commercial interstate carrier various mailings, items and things for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | DATE<br>(on or about) | MAILING DETAILS |
|---|---|---|
| 2 | December 29, 2011 | Letter sent by Prenda Law on behalf of AF Holdings to P.M. threatening legal action unless a settlement fee of $3,400 was paid. |
| 3 | August 28, 2012 | Letter sent by Prenda Law on behalf of AF Holdings to S.Y. threatening legal action unless a settlement fee of $4,000 was paid. |
| 4 | November 7, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee of $4,000 was paid. |
| 5 | November 21, 2012 | Letter sent by Prenda Law on behalf of Ingenuity 13 to D.W. threatening legal action unless a settlement fee was paid. |
| 6 | March 26, 2013 | Letter sent by Anti-Piracy Law Group on behalf of LW Systems to P.R. threatening legal action unless a settlement fee was paid. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

26

34

**COUNTS 7-16**
(Wire Fraud)
18 U.S.C. § 1343

37.    The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

38.    On or about the following dates, in the State and District of Minnesota, the defendant,

**PAUL R. HANSMEIER and
JOHN L. STEELE,**

having devised and intending to devise the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | WIRE DETAILS |
|---|---|---|
| 7 | January 5, 2012 | Processing and settlement of check in the amount of $2,400 from P.M. to Prenda Law |
| 8 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:   Madison Fox – Busty Beauty in Red Lingerie" to the Pirate Bay |
| 9 | June 1, 2012 | Uploading of torrent file associated with "Fan Favorite:   Amy Brooke – Anal Dildo and Squirting" to the Pirate Bay |

27

U.S. v. Paul Hansmeier et al.

| COUNT | DATE (on or about) | WIRE DETAILS |
|-------|--------------------|--------------|
| 10 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Tory Lane – Pink Heels" to the Pirate Bay |
| 11 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Rosemary Radiva – Petite, Sexy Asian Plays with Herself" to the Pirate Bay |
| 12 | June 2, 2012 | Uploading of torrent file associated with "Fan Favorite: Spencer Scott – Playmate on a Motorcycle" to the Pirate Bay |
| 13 | August 21, 2012 | Uploading of torrent file associated with "A Peek Behind the Scenes at the Show" to the Pirate Bay |
| 14 | March 1, 2013 | Processing and settlement of Cashier's Check in the amount of $2,200 from W.W. to Prenda Law |
| 15 | March 8, 2013 | Processing and settlement of check in the amount of $1,500 from P.R. to LW Systems |
| 16 | April 10, 2013 | Processing and settlement of check in the amount of $1,200 from M.B. to Livewire Holdings |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 17
(Conspiracy to Commit Money Laundering)
18 U.S.C. § 1956(h)

39.     The allegations contained in paragraphs 1 through 38 of this Indictment are re-alleged as if stated in full herein.

40.     Beginning no later than in or about 2012 and continuing at least through in or about 2013, in the State and District of Minnesota and elsewhere, the defendants,

### PAUL R. HANSMEIER and
### JOHN L. STEELE,

did knowingly and willfully combine, conspire, and agree to conduct and attempt to conduct financial transactions affecting interstate commerce, namely, transfers of funds related to Under the Bridge Consulting, knowing that the property involved in the financial transactions involved proceeds of a specified unlawful activity, that is, conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

29

U.S. v. Paul Hansmeier et al.

## **COUNT 18**
(Conspiracy to Commit and Suborn Perjury)
18 U.S.C. § 371

41.     The allegations contained in paragraphs 1 through 34 of this Indictment are re-alleged as if stated in full herein.

42.     Beginning no later than in or about 2012 and continuing at least through in or about 2014, in the State and District of Minnesota and elsewhere, the defendants,

### **PAUL R. HANSMEIER and**
### **JOHN L. STEELE,**

did unlawfully, knowingly, voluntarily, and intentionally combine, conspire, confederate, and agree with each other and others to commit an offense against the United States, namely to commit and suborn perjury in violation of Title 18, United States Code, Sections 1621 and 1622.

### Purpose of the Conspiracy

43.     The purpose of the conspiracy was to conceal and disguise their involvement in the scheme described in paragraphs 1 through 34 of the Indictment by providing false and misleading testimony and declarations, and causing others to provide false and misleading testimony and declarations, in cases and to courts throughout the country.

### Manner and Means of the Conspiracy

44.     The manner and means of the conspiracy are described in paragraphs 1 through 34 of the Indictment.

30

## Overt Acts

45.     In order to effect the objects of the conspiracy and in furtherance of the conspiracy, the conspirators committed and caused to be committed the following specific acts, among others:

a.      On or about February 27, 2013, defendants caused M.L. to sign a declaration "under penalty of perjury," later filed in AF Holdings LLC v. Andrew Magsumbol, 12-cv-4221 (N.D. Cal.), falsely and misleadingly representing that he was the "CEO" of AF Holdings when, in fact, M.L. was nothing more than a figurehead used by the defendants to disguise their involvement with AF Holdings.

b.      On or about March 6, 2013, HANSMEIER was deposed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), and falsely and misleadingly testified under oath that he had never worked for and had little association with Prenda Law, and that he was not involved in Prenda's finances.   In fact, HANSMEIER, along with STEELE, exerted substantial control over Prenda Law as well as its finances. HANSMEIER further falsely and misleadingly testified that M.L. was responsible for creating AF Holdings, M.L. was the sole employee and manager of AF Holdings, M.L. was the person responsible for making "litigation decisions," and that "the marching orders come from" M.L., when in fact HANSMEIER and STEELE caused AF Holdings to be created, and controlled and made decisions on behalf of AF Holdings.   HANSMEIER also falsely and misleadingly testified that the purpose of the copyright litigation brought on

31

behalf of AF Holdings was not profit but "to generate a deterrent effect in stealing [AF Holdings'] copyrighted works," when in fact the purpose of the litigation was to generate a profit for HANSMEIER and STEELE and the copyrighted works were never made publically available for purchase by AF Holdings.

      c.     On or about May 2, 2013, STEELE and HANSMEIER caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that M.L. "manage[d] various adult content related companies, including AF Holdings LLC," when in fact HANSMEIER and STEELE controlled AF Holdings. The defendants further caused M.L. to falsely and misleadingly represent that—as representative of AF Holdings—he previously signed documents certifying that he reviewed Alternative Dispute Resolution policies with the name "Salt Marsh" when, in fact, M.L. neither reviewed any such policies nor signed the certifications as "Salt Marsh."

      d.     On or about May 28, 2013, STEELE signed an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein he falsely and misleadingly stated that he merely introduced A.C. to M.L. and that thereafter his "understanding" was that A.C. "participated in a limited number of transactions in 2011 with [M.L.]'s companies," when in fact STEELE used A.C. and M.L.'s names to disguise his control over AF Holdings and Ingenuity 13, and at all relevant times controlled those companies.

32

e.       On or about August 26, 2013, the defendants caused M.L. to sign an affidavit "under penalty of perjury," later filed in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.), wherein M.L. falsely and misleadingly represented that the membership interests in AF Holdings are held in a trust named "Salt Marsh," whose sole beneficiaries are M.L.'s unborn children, and that M.L. was AF Holdings' managing member.   In fact, AF Holdings was controlled by STEELE and HANSMEIER, and M.L. merely served as a nominee to conceal the defendant's interest in AF Holdings.

f.       On or about August 27, 2013, STEELE and HANSMEIER caused M.L. to sign a notarized declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly declaring: (i) M.L. formed AF Holdings in mid-2011; (ii) that he was "the only manager" that AF Holdings, LLC ever had; (iii) that "[n]either John Steele, [P.D.] nor Paul Hansmeier ever served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority or an ownership interest in AF Holdings"; (iv) that "[t]he only role that Steele, [P.D.] and Hansmeier have played with respect to AF Holdings, LLC is that of its attorney." In fact, STEELE and HANSMEIER created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings.   In the same declaration, STEELE and HANSMEIER caused M.L. to falsely and misleadingly declare that he started AF Holdings because (i) he "believed that [he] could purchase copyrights for little-to-nothing, retain attorneys to ward off the piracy and then resell the copyrights for a profit"; (ii) that "[t]he

33

copyrights [AF Holdings] held would be worth significant sums if even a reasonable percentage of the people who stole the content instead purchased it"; and (iii) that litigation was simply "a necessary evil," when in fact, the copyrights owned by AF Holdings were obtained for the sole purpose of litigation and the copyrighted works were never made publically available for purchase by AF Holdings.

g.     On or about August 28, 2013, HANSMEIER signed a declaration "under penalty of perjury," later filed in AF Holdings v. Joe Navasca, 12-cv-2396 (N.D. Cal.), falsely and misleadingly claiming that "I have never served as a director, officer, manager, or employee of AF Holdings or otherwise possessed managerial authority over or an ownership interest in AF Holdings" when in fact HANSMEIER and STEELE owned and controlled AF Holdings. In the same declaration, HANSMEIER falsely and misleadingly claimed that "I have never created a Pirate Bay account in my life and categorically deny ever uploading and/or downloading any BitTorrent files of any past client of mine, including AF Holdings" when in fact HANSMEIER and STEELE caused P.H. to upload their purported clients' pornographic movies to BitTorrent file-sharing websites.

h.     On or about September 30, 2013, STEELE falsely and misleadingly testified under oath at a hearing in AF Holdings v. John Does, 12-cv-1445-49 (D. Minn.) that M.L. was the "controlling member" of AF Holdings, and that A.C. had spoken to and given permission to M.L. for AF Holdings to use A.C.'s name on a copyright transfer

34

document. STEELE further testified, falsely and misleadingly, that he had "no ownership interest, never had, in Prenda Law. I didn't set up a company, bogus or otherwise, AF Holdings." In fact, STEELE and HANSMEIER exerted control over AF Holdings and Prenda Law, and M.L. was a pawn used by STEELE and HANSMEIER to conceal their involvement in the scheme. During this hearing, HANSMEIER (acting as an attorney for AF Holdings) asked questions of STEELE and thereby suborned the perjury set forth above.

        i.      On or about January 28, 2014, STEELE caused M.L. to falsely and misleadingly testify under oath in a hearing in AF Holdings v. Rajesh Patel, 12-cv-262 (N.D. Ga.), that he was the "trustee" and "owner" of AF Holdings, and that STEELE and HANSMEIER did not own any part of AF Holdings. M.L. further falsely and misleadingly described B.G. and P.D. as primarily responsible for Prenda Law's copyright litigation, and falsely downplayed STEELE and HANSMEIER's role in AF Holdings and in the related copyright litigation.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

46.    Counts 1-17 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

U.S. v. Paul Hansmeier et al.

47. As the result of the offenses alleged in Counts 1-16 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1-16 of this Indictment.

48. As a result of the offenses alleged in Count 17 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the violations alleged in Count 17 of this Indictment, or any property traceable to such property.

49. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and by Title 18, United States Code, Section 982(b)(1).


A TRUE BILL


_____          _____
UNITED STATES ATTORNEY                        FOREPERSON


36

AO 245B (Rev. 11/16)  Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of Minnesota

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **JUDGMENT IN A CRIMINAL CASE** |
| | § | |
| v. | § | |
| | § | Case Number: **0:16-CR-00334-JNE-KMM(2)** |
| **JOHN L STEELE** | § | USM Number: **14421-104** |
| | § | **Mark Eiglarsh** |
| | § | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to counts 1 and 17

☐ pleaded nolo contendere to count(s) which was accepted by the court

☐ was found guilty on count(s) after a plea of not guilty

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:1349 CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD | 2014 | 1 |
| 18:1956(h) CONSPIRACY TO COMMIT MONEY LAUNDERING | 2013 | 17 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Counts 2-16 and 18 are dismissed on the motion of the United States

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**July 9, 2019**
Date of Imposition of Judgment

**s/ Joan N. Ericksen**
Signature of Judge

**JOAN N. ERICKSEN**
**UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

**July 9, 2019**
Date

1

AO 245B (Rev. 11/16)  Sheet 2 - Imprisonment

DEFENDANT:         JOHN L STEELE
CASE NUMBER:       0:16-CR-00334-JNE-KMM(2)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
**60 months.  This term consists of 60 months as to count 1 and 60 months as to count 17, to be served concurrently.**

☒   The court makes the following recommendations to the Bureau of Prisons:
      **That the defendant participate in the Residential Drug Abuse Program.**
      **That the defendant participate in the Inmate Financial Responsibility Program.**
      **That the defendant be imprisoned in McKean, Pennsylvania, or, if not McKean, in Lewisburg, Pennsylvania.**

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

      ☐   at                       on

      ☐   as notified by the United States Marshal.

☒   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      ☒   **by 10 a m. on Tuesday, September 3, 2019.  If the defendant has not been designated to an institution at that time, the defendant shall surrender at the U.S. Marshal's Office in the U.S. Courthouse in Pittsburgh, Pennsylvania, by 10 a m. on Tuesday, September 3, 2019.**
      ☐   as notified by the United States Marshal.
      ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

      Defendant delivered on _____  to

at _____, with a certified copy of this judgment.


                           UNITED STATES MARSHAL

                               By
                DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 11/16)  Sheet 3 – Supervised Release

DEFENDANT:  JOHN L STEELE
CASE NUMBER:  0:16-CR-00334-JNE-KMM(2)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **two years.  This term consist of two years as to count 1 and two years as to count 17, to be served concurrently.**

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)

4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. (*check if applicable*)

5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7. ☐ You must participate in an approved program for domestic violence. (*check if applicable*)

   The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

3

AO 245B (Rev. 11/16)  Sheet 3A — Supervised Release

| | |
|---|---|
| DEFENDANT: | JOHN L STEELE |
| CASE NUMBER: | 0:16-CR-00334-JNE-KMM(2) |

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at www.uscourts.gov.

Defendant's Signature  _____     Date _____

Probation Officer's Signature  _____     Date _____

4

DEFENDANT: JOHN L STEELE
CASE NUMBER: 0:16-CR-00334-JNE-KMM(2)

# SPECIAL CONDITIONS OF SUPERVISION

a. The defendant shall submit to substance abuse testing as approved and directed by the probation officer.

b. If not employed at a regular lawful occupation, as deemed appropriate by the probation officer, the defendant may be required to perform up to 20 hours of community service per week until employed. The defendant must also participate in training, counseling, daily job search, or other employment-related activities, as directed by the probation officer.

c. The defendant shall provide the probation officer access to any requested financial information, including credit reports, credit card bills, bank statements, and telephone bills.

d. The defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without prior approval of the probation officer.

e. The defendant shall not hold employment with fiduciary responsibilities without prior approval from the probation officer.

AO 245B (Rev. 11/16) Sheet 5 – Criminal Monetary Penalties

| DEFENDANT: | JOHN L STEELE |
|---|---|
| CASE NUMBER: | 0:16-CR-00334-JNE-KMM(2) |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $200.00 | | $.00 | $1,541,527.37 |

☐ The determination of restitution is deferred until _An Amended Judgment in a Criminal Case (AO245C)_ will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name and Address of Payee | **Total Loss | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Separate document to be submitted to Clerk's Office** | | | |
| | | | |
| | | | |
| TOTALS: | | | |
| **Payments are to be made to the Clerk, U.S. District Court, for disbursement to the victim.** | | | |

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒ the interest requirement is waived for the    ☐ fine      ☒ restitution

    ☐ the interest requirement for the    ☐ fine      ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

6

AO 245B (Rev. 11/16)  Sheet 6 – Schedule of Payments

DEFENDANT:         JOHN L STEELE
CASE NUMBER:     0:16-CR-00334-JNE-KMM(2)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payments of $ _____ due immediately, balance due

☐ not later than _____ , or

☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal 20 *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment
to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release
from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that
time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:
**Special assessment of $200 is due and payable immediately.**

**Payments of not less than $100 per month are to be made over a period of 2 years commencing 30 days after release
from confinement.**

**Over the period of incarceration, the defendant shall make payments of either quarterly installments of a minimum
of $25 if working non-UNICOR or a minimum of 50 percent of monthly earnings if working UNICOR.**

**The defendant's obligation to pay the full amount of restitution continues even after the term of supervised release
has ended, pursuant to federal law. See 18 U.S.C. § 3613. If the defendant is unable to pay the full amount of
restitution at the time supervised release ends, the defendant may work with the U.S. Attorney's Office Financial
Litigation Unit to arrange a restitution payment plan.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several – **The total amount of restitution, $1,541,527.37, is owed jointly and severally with Paul R. Hansmeier,
16-CR-334 (JNE/KMM) (1).**

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court cost(s):
☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

7

Prob 22 (Rev. 03/97)

| | |
|---|---|
| **TRANSFER OF JURISDICTION** | DOCKET NO. (Transferring Court) 0864 0:16CR00334-002(JNE) |
| | DOCKET NO. (Receiving Court) CR-22-50141-PHX-DWL |

| NAME AND LOCATION OF | DISTRICT MINNESOTA | DIVISION St. Paul, Minnesota |
|---|---|---|
| John L. Steele | NAME OF SENTENCING JUDGE Honorable Joan N. Ericksen | |
| | DATES OF SUPERVISED RELEASE | FROM 1/18/2022  TO 1/17/2024 |

| OFFENSE |
|---|
| Conspiracy to Commit Mail Fraud and Wire Fraud and Conspiracy to Commit Money Laundering |

| **PART 1 – ORDER TRANSFERRING JURISDICTION** |
|---|
| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF <u>MINNESOTA</u> |

IT IS HEREBY ORDERED pursuant to 18 U.S.C. § 3605 the jurisdiction of the defendant named above be transferred with the records of this Court to the United States District Court for the <u>District Of Arizona</u> upon that Court's order of acceptance of jurisdiction.  This Court hereby expressly consents that the period of supervision may be changed by the District Court to which this transfer is made without further inquiry of this Court.

| June 14, 2022 | s/ Joan N. Ericksen |
|---|---|
| Date | Joan N. Ericksen, United States District Judge |

| **PART 2 – ORDER ACCEPTING JURISDICTION** |
|---|
| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA |

IT IS HEREBY ORDERED that jurisdiction of the above defendant be accepted and assumed by this Court from and after the entry of this order.

| June 15, 2022 | |
|---|---|
| Effective Date | United States District Judge |